[Civ. No. 5617. First Appellate District, Division Two.—December 20, 1926.]

SAN JOAQUIN GROCERY CO. (a Corporation), Respondent, v. W. D. TREWHITT et al., Appellants.

[1] NEGLIGENCE — ADJOINING LAND OWNERS — DAMAGE CAUSED BY WATER FROM ADJOINING PROPERTY — INDEPENDENT CONTRACTOR — PLEADING—EVIDENCE.—In this action to recover damages caused by water alleged to have drained, seeped, and percolated into the basement of plaintiff's store from the adjoining property, plaintiff was not entitled to recover in the absence of evidence that water permitted to be discharged by independent contractors engaged in digging a foundation for a building on the adjoining property, as distinguished from water used by brick-masons employed by another independent contractor, "drained, seeped, and percolated" into plaintiff's basement as alleged in the complaint.

[2] ID. — EMPLOYEES OF INDEPENDENT CONTRACTOR — PLEADING — INSTRUCTIONS.—In such action, the refusal of an instruction to find for defendants if the damage was caused by the negligence of brick-masons as employees of an independent contractor constituted prejudicial error, although defendants did not plead that the employer of said masons was an independent contractor.

(1) 1 C. J., p. 1232, n. 16 New.   (2) 4 C. J., p. 1050, n. 85.

APPEAL from a judgment of the Superior Court of Fresno County. Charles R. Bernard, Judge. Reversed.

The facts are stated in the opinion of the court.

Chester H. Warlow for Appellants.

Gearhart, Carling & Cummings for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to recover a judgment for damages. The defendants answered and a trial was had in the lower court before the court sitting with a jury. The jury returned a verdict in favor of the plaintiff and a judgment was entered thereon. The defendants moved for a new trial on all the statutory grounds; the motion was denied. There-

1. See 19 Cal. Jur. 694, 696.

after the defendants appealed from the judgment under section 953a of the Code of Civil Procedure.

The appellants present several points, each of which they claim would support a reversal, but in the view that we take of the record it will be unnecessary to consider anything except the claim that the evidence is insufficient to justify the verdict and that the trial court erred in refusing to give one of the instructions requested by the appellants. We will take those points up in the order stated, but before doing so it is necessary to make a statement of facts.

The plaintiff is a corporation engaged in conducting a grocery store in the city of Fresno. It also maintains a warehouse, which is located on Fulton Street a short distance south of Los Angeles Street. Back of the warehouse on the eastern side is an alley. The plaintiff's holding includes lots 18 to 26. The property on the northerly side of the warehouse and bounded by Fulton Street, Los Angeles Street, the alley, and by plaintiff's warehouse, was purchased by Ben Tyre. The Tyre holding includes lots 27 to 32. When Mr. Tyre purchased his lots some of them were occupied by dwellings. He proceeded to wreck the dwellings, to level up the ground, and to construct a building covering his holding. Some of the dwellings had cellars. Those cellars were filled up and the grounds were scraped so as to make the surface level. In this behalf, in its complaint, the plaintiff alleges: "That on or about the 12th day of February, 1923, the defendants, their employees, agents and servants, leveled, scraped and checked by means of levees all of said Lots 27, 28, 29, 30, 31 and 32 of said Block 202, to a depth of about eight inches, and made numerous excavations on the said lots to a depth of about six feet, for the construction of certain concrete piers, particularly near the common boundary of said Lots 26 and 27 and along the easterly boundary line of said Lot 27; that in the course of said leveling, scraping, excavating and construction the defendants, their employees, agents and servants, with gross carelessness and negligence caused and permitted large quantities of water to be poured and to pour onto said Lots 27, 28, 29, 30, 31 and 32 and into the said excavations and to flood the same. That on or about the 12th day of February, 1923, by reason of said gross carelessness and negligence on the part of said defend-

ants, their employees, agents and servants, the said water accumulated along the wall of the said building of said plaintiff on said Lot 26 near the said common boundary line of said Lots 26 and 27, and the said water drained, seeped and percolated into the said basement of plaintiff and, without any fault or lack of care on the part of the plaintiff, the said water flowed into, upon and around the goods which this plaintiff then owned and had there stored, and injured, damaged and completely destroyed and rendered valueless large quantities of same, all to the great injury and damage of this plaintiff in the sum of One Thousand ($1000.00) Dollars.'' The defendants denied the allegations contained in said paragraph and on the trial it transpired that the Tyre lots were graded, filled, and scraped; that after the same had been leveled checks were made so that each lot was surrounded with a check and thereafter water was run onto each lot for the purpose of causing the dirt to settle; and thereafter certain holes were dug for the purpose of putting in piers to obtain a support on which to rest the roof. Along the northern boundary of the plaintiff's property a trench was dug and a foundation of concrete was placed in the trench; and thereafter the dirt was thrown up against the concrete foundation so constructed. At the end of that wall, and at every twenty feet, a pier was set down on a level with the bottom of the plaintiff's wall and later the soil was replaced around the piers and settled with water. That process had been completed two weeks before February 12, 1923. After Friday, February 9, 1923, the defendants were not on the job. The brick-masons were there doing the brick work. When the foundation was ready brick-masons came forward and proceeded to lay brick walls on top of the concrete foundation. In doing their work the brick-masons let water through a hose to make mortar and wet the brick. On Monday, February 12, 1923, the southerly wall of the Tyre building had progressed to the point where it was about nine feet in height above its foundation. That was the result of two and a half days' work by the brick-masons. Some of the witnesses testified that the running of water to settle the soil stopped on Wednesday, February 7th; however, Mr. Peterson, the general manager of the plaintiff, testified that he was about the new building on Thursday,

Friday, and Saturday, that is, February 8th, 9th, and 10th, and to use his language, "It is my impression, and as far as my memory serves me, I believe there was (water spread about the property), in fact, I am quite sure." On Sunday, February 11th, between 8:05 A. M. and 12:50 P. M., there was a rain of .39 of an inch. Several witnesses testified that on Saturday afternoon they saw water running out of a three-quarter inch hose at a point on the Tyre property twenty feet north of the plaintiff's building and fifty feet west of the alley. There was further testimony that said stream of water was still flowing Monday morning, February 12, 1923. Witnesses testified that between 8 o'clock Monday morning and noon of that day they went down into the basement of the plaintiff's store and there they saw, at a point about fifty feet west of the alley, water coming through the north wall of plaintiff's building, and that there was in the neighborhood of two and a half inches of water on the floor of the basement. No witness testified to any fact or facts showing where the water had come from which percolated through the north wall. Mr. Peterson testified that his building had a roof of such nature that the rain falling thereon would run to drains which emptied on the Fulton Street side. The evidence is without conflict that the work done on the Tyre property before the brick-masons commenced to lay brick was done by the defendants under an independent contract and that the brick work was done by Paul Kindler, an independent contractor.

[1] There is evidence in the record that when the foundation wall for the Tyre building was being constructed along the north line of the plaintiff's property that the soil was excavated up against the north wall of the plaintiff's property and to a depth of about three feet. A strip of land four and one-half inches in width along the north side of said wall was on the plaintiff's side of the property line. There is no evidence that the soil in the territory four and one-half inches wide was of any peculiar quality or that it was impervious to water. Neither is there any evidence in the record that the four and one-half inches of soil was not afterward put in place or that it was improperly put in place. When the case went to the jury there were the possibilities that the water which was afterward found in the plaintiff's basement was (1) rain-water; (2) water used for

settling soil by the defendants as independent contractors; (3) water escaped from the three-quarter inch hose used by the masons; and (4) waters coming from other sources. There was no evidence of a water channel natural or artificial, or that waters percolated through soil in any place leading to the body of water found in the plaintiff's basement. When the case went to the jury there was no evidence showing that the water which the defendants had discharged on the Tyre property "drained, seeped and percolated into the said basement of plaintiff. . . . " Such proof was necessary. In *Puckhaber* v. *Southern Pac. Co.,* 132 Cal. 363, at page 365 [64 Pac. 480, 481], the court said: "It is as necessary for the plaintiffs to show that defendant's negligence caused the injury, as it is for them to show that defendant was guilty of negligence, or that the party was injured." In *Albert* v. *McKay & Co.,* 53 Cal. App. 325, at 327 [200 Pac. 83, 84], this court said: "Resting on circumstantial evidence the plaintiff's case is not sufficient merely because the circumstances proved are consistent with the plaintiff's theory; but the circumstances must show, when weighed with the evidence opposed to them, that the circumstances relied on have more convincing force substantiating the theory contended for, and from which theory it results that the greater probability is in favor of the party upon whom the burden rests. (*Wilbur* v. *Emergency Hospital Assn.,* 27 Cal. App. 751, 759 [151 Pac. 155]; *Puckhaber* v. *Southern Pac. Co.,* 132 Cal. 363, 366 [64 Pac. 480]; *Union Investment Co.* v. *San Francisco Gas etc. Co.,* 168 Cal. 58, 62 [141 Pac. 807].) " In the case entitled *Estate of Wallace,* 64 Cal. App. 107 [220 Pac. 682], Mr. Presiding Justice Finlayson, speaking for the court, at page 110, said: "An inference cannot be said to be established by circumstantial evidence, either in a civil or a criminal case, unless the circumstances relied upon are of such a nature and so related to each other that it is the only inference which can fairly or reasonably be drawn from them. If other inferences may reasonably be drawn from the facts in evidence, the evidence does not support the inference sought to be deduced from it. This rule is stated in *Neal* v. *Chicago etc. Co.,* 129 Iowa, 5 (2 L. R. A. (N. S.) 905, 105 N. W. 197), as follows: 'If it appears that the facts and circumstances from which a conclusion is sought to be deduced, although

consistent with that theory, are equally consistent with some other theory, they do not support the theory contended for.' In *Puckhaber* v. *Southern Pac. Co.* 132 Cal. 366 [64 Pac. 480], the court quotes from *Stringert* v. *Ross Tp.*, 179 Pa. 614 [36 Atl. 345], as follows: ' . . . the question then arises whether the inference that the death was caused by the negligence of the defendant is the only inference that can be drawn from the facts that are in evidence. If it is not, and other inferences may be drawn from the same facts, then there is nothing for the jury but mere guesses or conjectures, and upon these no verdict can be founded.' (See, also, 10 R. C. L., p. 1007.)'' In the case of *California etc. Co.* v. *Industrial Acc. Com.*, 59 Cal. App. 225, at page 228 [210 Pac. 524, 525], Mr. Presiding Justice Langdon, speaking for the court, said: "A failure to sustain a burden of proof cannot be remedied by a finding based upon guess, conjecture, or surmise. (Glass on Workmen's Compensation Law, pp. 39, 40; *Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363 [64 Pac. 480].)'' So in this case the jury were left to merely guess where the waters found in the plaintiff's basement had come from—whether said waters were those in division (1), (2), (3), or (4), as hereinabove indicated.

[2] The instruction requested and which was not given, and concerning which the appellants complain, was worded as follows: "You are instructed that the defendants are responsible for their own negligence and for the negligence of their servants and agents within the scope of their employment, but defendants are not responsible for the negligent acts of the independent contractors or the negligent acts of the servants or agents of the independent contractors. If you believe from the evidence in this case that the brick masons and plasterers were the employees of an independent contractor and not of the defendant, and that the cause of the damage suffered by the plaintiff, if any, was the negligence of the brick-masons or plasterers permitting water to run upon the ground from a hose used by them, if you believe that water did run upon the ground from a hose used by them, you should find for the defendants.'' From what has been said above, it is patent that it was altogether material and that the respondent in introducing its case should have shown that the waters which injured its property were the waters discharged by these appellants

as independent contractors as distinguished from the waters discharged by Paul Kindler as an independent contractor. We note that the respondent contends that the appellants had not pleaded the facts that Paul Kindler was an independent contractor, nevertheless the respondent had pleaded that the waters which injured him were the waters which the "said defendants, their employees, agents and servants . . . " discharged on the Tyre property. In making the contention which the appellants are making they are but negativing the allegation of the plaintiff's complaint. They are not introducing new matter. It was therefore prejudicial error for the trial court to refuse to give the instruction requested.

The judgment is reversed.

Nourse, J., and Preston, P. J., *pro tem.*, concurred.